UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
EUGENE MOORE,

                  Plaintiff,

     -against-

THE CITY OF NEW YORK, DETECTIVE GREGORY
JEAN-BAPTISTE (NYPD) SHIELD #6454, SERGEANT
VASSILIOS ADINIOU (NYPD) SHIELD #2826,
SERGEANT EDWARD LEISENGANG (NYPD)
SHIELD #03192, LIEUTENANT ROBERT ORTLIEB
(NYPD) TAX# 913999, INSPECTOR KENNETH LEHR
(NYPD), AND OFFICERS JOHN DOE #1-10
(THE NAME JOHN DOE BEING FICTICIOUS, AS
THE TRUE NAME(S) IS/ARE PRESENTLY
UNKNOWN),

                  Defendants.
------------------------------------------------------------------------X

Index No.: 15-CV-4365 (ENV)(ST)

**FIRST AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

The Plaintiff, complaining by his attorney(s), THE LAW OFFICE OF JEFFREY CHABROWE, P.C., respectfully shows this Court and alleges:

## INTRODUCTION

1. This is a civil rights action to vindicate the rights of Plaintiff Eugene Moore, who was wrongfully incarcerated for over a year after members of the New York City Police Department ("NYPD") planted a gun on him, and then knowingly forwarded false, unreliable and otherwise misleading evidence to the Kings County District Attorney's office in order to secure his conviction.

2. A December 11, 2014 New York Times investigation revealed that Eugene Moore was but one of as many as *six innocent citizens* who NYPD officers from the 67th Precinct, including the Defendants, likely targeted as part of a larger gun-planting scheme.

3. The wrongful arrest, incarceration, and prosecution of Eugene Moore was brought to a just, if overdue, end when Judge William Harrington of the State Supreme Court, following a full and fair litigation of the matter, found the testimony of Defendant Jean-Baptiste "incredible," and ruled that there was no probable cause to arrest or search Mr. Moore.

4. The individual Defendants in this case are now being sued for their respective roles in the Plaintiff's unjust arrest, incarceration, and prosecution.

5. The City of New York is being sued for failing to properly train, supervise, and/or discipline New York City police officers and Kings County Prosecutors, and for continuing to tolerate and defend a widely publicized law enforcement culture marked by a systemic and willful indifference toward the rights of citizens.

## JURISDICTION

6. Jurisdiction is founded upon the existence of a Federal Question.

7. This is an action to redress the deprivation under color of statute, ordinance, regulation, custom, or usage of rights, privileges, and immunities secured to the Plaintiff by the Fourth and Fourteenth Amendments to the Constitution of the United States pursuant to 42 U.S.C. Section 1983 and arising under the law and statutes of the State of New York.

8. Jurisdiction is founded upon 28 U.S.C. Sections 1331, 1343(3) and 1343(4), this being an action authorized by law to redress the deprivation under the color of law, statute, ordinance, regulation, custom and usage of rights, privileges and immunities secured to Plaintiffs by the Fourth and Fourteenth Amendments to the Constitution of the United States.

## VENUE

9. Venue lies in this District pursuant to 28 U.S.C.A. Section 1391(b) (2) since the events giving rise to the claim occurred in the Eastern District.

## PARTIES

10. At all times relevant and hereinafter mentioned, Plaintiff EUGENE MOORE was a resident of Harlem in the City of New York.

11. Upon information and belief, at all times hereinafter mentioned, the Defendant, CITY OF NEW YORK was and still is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York, and that at all times relevant all Defendant officers were acting for, upon, and in furtherance of the business of their employer and within the scope of their employment.

12. Upon information and belief, at all times hereinafter mentioned, the Defendant, CITY OF NEW YORK, its agents, servants, and employees, operated, maintained and controlled the NEW YORK CITY POLICE DEPARTMENT, including all the police officers thereof.

13. Upon information and belief, at all times hereinafter mentioned, Defendant DETECTIVE GREGORY JEAN-BAPTISTE, Defendant SERGEANT VASSILIOS ADINIOU, SERGEANT EDWARD LEISENGANG, LIEUTENANT ROBERT ORTLIEB, INSPECTOR KENNETH LEHR, and OFFICER(S) JOHN DOE #1-10 were employed by the Defendant CITY OF NEW YORK, as member(s) of its police department.

14. The NEW YORK CITY POLICE DEPARTMENT is a local governmental agency, duly formed and operating under and by virtue of the Laws and Constitution of the State of

New York and the POLICE CHIEF OF THE NEW YORK CITY POLICE DEPARTMENT is responsible for the policies, practices, and customs of the NEW YORK CITY POLICE DEPARTMENT as well as the hiring, screening, training, supervising, controlling and disciplining of its police officers and civilian employees, and is the final decision maker for that agency.

15. This action arises under the United States Constitution, particularly under provisions of the Fourth and Fourteenth Amendments of the Constitution of the United States, and under federal law, particularly the Civil Rights Act, Title 42 of the United States Code, Section 1983, and the rights guaranteed by the Constitution and laws of the State of New York.

16. Individual Defendants in this action are being sued in both their individual and official capacities.

## STATEMENT OF FACTS

### -The Arrest of Eugene Moore-

17. October 11, 2012 began as a fairly ordinary day for 35 year old Plaintiff, Eugene Moore.

18. The autumn weather was cool, but temperate, and there was no sign of rain—so Mr. Moore decided to ride his bike from Harlem to Brooklyn to visit a friend.

19. When Mr. Moore arrived in Brooklyn late that morning, he stopped for a bit of takeout, picking up two sizable Styrofoam cartons of food, which were stacked on top of one another in a white plastic take-out bag. Mr. Moore dangled the bag from his handle bars as he continued riding toward his friend's residence.

20. Mr. Moore arrived at his destination earlier than expected so to kill a bit of time, he parked his bike at or near 70 Rockaway Parkway and smoked a cigarette.

21. Suddenly, an unmarked police car stopped abruptly in front of him, and Defendants Jean-Baptiste and Adiniou exited the vehicle, making a beeline for Mr. Moore.

22. The Defendants briefly identified themselves as police officers, as both were in plain clothes, and began to pat frisk Mr. Moore.

23. As the Defendants continued their pat down, Mr. Moore inquired as to why the police were searching him.

24. The Defendants answered, in sum and substance, that they had received a call from a woman who told them she had seen a man on a bike with a gun.

25. When Mr. Moore inquired whether the "woman" had specifically identified him or his bike, the officers answered, in sum and substance, "No. All the time we get calls, we don't get specific descriptions."

26. Just then, another unmarked police car rolled up, and two additional plain clothes officers (Doe #1 and #2)[1] exited the vehicle. Doe #1 and #2 seemed to be gesturing and signaling to one another about something; they then proceeded to the entryway of a nearby building, and emerged with an L-shaped object wrapped in what appeared to be a black plastic bag. The object was consistent with the shape of a gun.

27. Doe #1 and #2 then held the object up, as if to say, "Here it is!", and Defendants Jean-Baptiste and Adiniou handcuffed Mr. Moore and placed him in the back of their squad car.

---

[1] Plaintiff's diligent search for the identity of all officers involved remains ongoing. Accordingly, the Corporation Counsel is on notice that the plaintiff intends to name every officer involved as defendants once their identities are revealed through discovery. All appropriate steps to prepare the officers' defenses and otherwise inform them that they will be individually named should be undertaken forthwith.

28. Rather than proceed directly to the precinct, Jean-Baptiste and Adniniou seemed to be stalling, talking on the phone, making an extended stop, and inexplicably driving Mr. Moore around the neighborhood for an hour or two.

29. Defendants would later record the time of Mr. Moore's arrest as 3:07 PM, several hours after they took him into custody.

30. Mr. Moore was charged with Criminal Possession of a weapon in the Third Degree (a felony) and Criminal Possession of a weapon in the Fourth Degree.

31. Unable to make bail, a confused and terrified Eugene Moore was sent to Rikers Island, wondering if anyone would believe the truth about what had happened to him, given that it was his word versus that of New York City police officers.

**-The Ever-Changing Stories of Defendant Jean-Baptiste-**

32. Police documents indicate that Jean-Baptiste initially told prosecutors he was out on patrol when he witnessed Mr. Moore ride his bike past his own moving vehicle with a white plastic bag "hanging" from it.

33. A portion of these documents was reviewed and signed off on by Defendant Sergeant Leisengang, despite containing a timeline that made no sense; notably, some copies of these documents contained handwritten attempts to "correct" that timeline. Whichever copy or copies Leisengang reviewed, they all cried out for further inquiry and intervention by a reviewing supervisor—but Leisengang failed to do so.

34. According to the documents, as Jean-Baptiste passed the bicycle in his car, he also somehow identified "food inside the bag," as well as the "outline of a gun."

35. Jean-Baptiste then claimed he "pulled [Mr. Moore] over" and recovered the gun.

6

36. In contrast, when Jean-Baptiste later testified before the Grand Jury, he stated that he initially came upon a stationary Mr. Moore "sitting on his bike."

37. Jean-Baptiste then exited his vehicle and approached Mr. Moore, who allegedly removed one of two cartons of food from the white plastic bag, enabling Jean-Baptiste to observe the "outline of a handgun underneath the bag, underneath the second container" of food.

38. Jean-Baptiste specifically testified that he observed the gun *underneath* the container of food, as he stood "directly in front" of Mr. Moore, presumably looking downward into the bag—a feat that would have required an x-ray vision to see a gun through the container.

39. Perhaps knowing this story sounded absurd, Jean-Baptiste then testified that he actually *first* viewed the firearm when he exited his vehicle, before approaching Mr. Moore, and that the gun was "out of the bag."

40. Approximately one year later, at Mr. Moore's suppression hearing, Jean-Baptiste testified to having no recollection of ever saying he saw the gun "out of the bag," and denied ever having made such an observation.

41. In addition, Jean-Baptiste made a substantive addition to his evolving narrative: now Jean-Baptiste claimed that his impetus for approaching Mr. Moore stemmed from a phone call made by a "confidential informant." The informant reportedly alleged that someone matching Mr. Moore's general physical characteristics was seen riding a bike and was "in possession of a gun in a white plastic bag."

42. According to Jean-Baptiste, the newly revealed confidential informant was credible, and provided Jean-Baptiste with tips "well over 30 times" over the course of some three years. Yet on cross, Jean-Baptiste testified that he had only ever been contacted by the

informant on Defendant Adiniou's phone—and he had only been working with Adiniou for about a month.

43. When asked whether Jean-Baptiste had made any effort to obtain surveillance footage of his interaction with Mr. Moore from area businesses, he conceded he had not.

44. There was no D.N.A. or fingerprint evidence on the defaced 380 point firearm Jean-Baptiste allegedly recovered from Mr. Moore.

45. Notably, Defendant Lieutenant Ortlieb signed off on a release of funds to compensate the alleged informant (the disbursement of which was left to Jean-Baptiste and Adiniou) for his/her gun tip; even more notably, the paperwork indicated that the gun attributed to Mr. Moore was actually seized October 5, 2012—*five days before* Mr. Moore's arrest. Yet incredibly, Ortlieb made no effort to inquire further, or otherwise intervene with the malicious prosecution of Mr. Moore.

46. Defendant Inspector Lehr also signed off on paperwork related to the alleged informant, despite having actual or constructive knowledge of the multiple inconsistencies contained in the stories of Jean-Baptiste and Adiniou; as with Ortlieb, Lehr made no effort to inquire further or intervene with the malicious prosecution of Mr. Moore.

47. During Mr. Moore's suppression hearing, it was also revealed that Jean-Baptiste had previously been convicted for D.W.I., though he testified to not remembering many details about it; a law enforcement source was subsequently quoted by the New York Daily News, claiming, "The incident stemmed from not just a claim of driving while intoxicated but also a sworn allegation that Jean-Baptiste left the scene of the accident and tried to conceal his car in a parked trailer."

48. Jean Baptiste also admitted at the hearing that he had previously been suspended after becoming angry and telling a superior officer that he "was going to rip off his neck and beat his ass up."

49. At the end of the hearing, Judge William Harrington noted the Jean-Baptiste had been "extremely evasive" and could "scarcely recall his own name."

50. The Court also found it "incredible that [Jean-Baptiste] was able to, in fact, see the gun inside the bag," and declined to give it credence, ruling, after a full and fair opportunity to litigate the issue, that Mr. Moore was arrested "without probable cause," and that there was no probable cause to search Mr. Moore; accordingly, the Court suppressed the gun evidence.

51. Mr. Moore was released from jail shortly thereafter—and his case was formally dismissed within days.

52. Mr. Moore had spent over a year of his life in jail based on nothing but the word of Jean-Baptiste—who would only later claim reliance on the word of an alleged "informant," whose story likewise made no sense.

53. In fact, to the extent any such informant existed, s/he was apparently so incredible that Jean-Baptiste elected not to include mention of him/her in any of his arrest paperwork, or in his initial conversation with the District Attorney's office.

54. In any event, again, after the matter was fully and fairly litigated, Judge Harrington found that any reliance on the alleged informant was unfounded, as the informant "didn't provide his basis of knowledge."

-Post Dismissal-

55. On December 11, 2014, the New York Times published the devastating results of an investigation involving Defendants Jean-Baptiste, Adiniou, and other officers assigned to the 67th Precinct in Brooklyn.

56. The report pointed to a series of disturbing similarities between the cases of Mr. Moore, and others targeted for gun charges by the officers: "Each gun was found in a plastic bag or a handkerchief, with no traces of the suspect's fingerprints. Prosecutors and the police did not mention a confidential informer until months after the arrests. None of the informers have come forward, even when defense lawyers and judges have requested they appear in court."

57. The report quoted multiple judges responding to the 67th Precinct officers' stories as "incredible," "inconsistent," and "perjured."

58. Within a month of the Times investigation, the New York Post reported that the number of those possibly victimized by false gun charges stemming from the 67th Precinct had risen to at least six, going back to 2007.

59. Upon information and belief, Defendant Jean-Baptiste is now retired, collecting his full pension, and was never disciplined in any way for his despicable conduct toward the Plaintiff.

60. Upon information and belief, none of the other Defendants, be they known or unknown, were ever subject to disciplinary action by the N.Y.P.D. either.

61. Incredibly, Kings County Assistant District Attorney Gregory Basso, who was the lead prosecutor on Eugene Moore's case, later became the lead prosecutor against another bogus Jean-Baptiste gun case involving a man named Jeffrey Herring.

62. Mr. Basso continued to take Jean-Baptiste at his word, zealously seeking a conviction against Mr. Herring amidst similarly nonsensical allegations, despite everything he had learned regarding the character and veracity of Jean-Baptiste. The former Chief Assistant Kings County District Attorney, and now Acting Kings County District Attorney, Eric Gonzalez, was also made aware of the officers' alleged miconduct, but ultimately took no legal action against them.

63. Eugene Moore continues to suffer the terrible effects of his wrongful arrest, prosecution, and incarceration to this day.

## AS AND FOR THE FIRST CAUSE OF ACTION
## ON BEHALF OF PLAINTIFF EUGENE MOORE AGAINST DEFENDANTS JEAN-BAPTISTE, ADINIOU, and OFFICERS DOE #1 AND #2

### Violation of Constitutional Rights Under Color of State Law
### —False Arrest and Imprisonment—

64. Plaintiffs incorporate by reference and reallege each and every allegation stated in Paragraphs 1 through 63.

65. The Fourth Amendment of the United States Constitution protects citizens from unreasonable searches and seizures by government officials, and prohibits law enforcement officers from arresting and detaining individuals in the absence of appropriate authorization. The Fourth Amendment also precludes police officers from conducting arrests in the absence of probable cause to believe that a crime has been committed.

66. Defendants Jean-Baptiste, Adiniou, and Officers Doe #1 and #2 arrested Eugene Moore absent probable cause.

67. The actions of Defendants violated Eugene Moore's rights under the United States Constitution. Given the total absence of any legal justification for arresting Eugene Moore, it was not objectively reasonable to arrest Eugene Moore for anything on October 11, 2012.

68. Defendants' actions were motivated by bad faith and malice.

69. This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

70. As a direct and proximate result of the unconstitutional acts described above, Plaintiff Eugene Moore has been irreparably injured.

**AS AND FOR THE SECOND CAUSE OF ACTION**
**ON BEHALF OF EUGENE MOORE AGAINST DEFENDANTS JEAN-BAPTISTE AND ADINIOU**

**Violation of Constitutional Rights Under Color of State Law**
**—Malicious Prosecution—**

71. Plaintiffs incorporate by reference and reallege each and every allegation stated in Paragraphs 1 through 64.

72. The Fourth Amendment of the United States Constitution protects citizens from overzealous and malicious prosecution by government officials without probable cause.

73. Eugene Moore was prosecuted, without probable cause, relative to the October 11, 2012 arrest as set forth herein.

74. Said charges resulted in a loss of liberty for Mr. Moore, as he was incarcerated for approximately one year as a result of the aforedescribed false and improper charges, and incurred substantial financial and emotional damages as a direct result.

75. Mr. Moore's criminal proceeding was terminated in favor of Mr. Moore, as the charges in question were dismissed outright.

76. Defendants' actions were motivated by bad faith, malice, and/or deliberate indifference to the rights of Eugene Moore.

77. This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

78. As a direct and proximate result of the unconstitutional acts described above, Plaintiff Eugene Moore has been irreparably injured.

**AS AND FOR THE THIRD CAUSE OF ACTION
ON BEHALF OF THE PALINTIFF AGAINST DEFENDANT JEAN-BAPTISTE**

**Violation of Constitutional Rights Under Color of State Law
-Denial of Constitutional Right to Fair Trial Due to Fabrication of Evidence-**

79. Plaintiff incorporates by reference and reallege each and every allegation stated in Paragraphs 1 through 78.

80. Defendant created false evidence against Plaintiff Eugene Moore.

81 Defendant forwarded false and material evidence and false information to prosecutors in the Kings County District Attorney's office.

82. Defendant misled the grand jury, the judge and the prosecutors by creating false evidence against Plaintiff Eugene Moore and thereafter providing false testimony throughout the criminal proceedings.

83. In creating false evidence against Plaintiff Eugene Moore, in forwarding false evidence and information to prosecutors, and in providing false and misleading testimony,

Defendant violated Plaintiff's constitutional right to a fair trial under the Due Process Clause of the Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

84. This conduct on the part of Defendant also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

85. As a direct and proximate result of the unconstitutional acts described above, Plaintiff Eugene Moore has been irreparably injured.

### AS AND FOR THE FOURTH CAUSE OF ACTION
### ON BEHALF OF EUGENE MOORE AGAINST DEFENDANTS JEAN-BAPTISTE, ADINIOU, AND OFFICERS DOE #1 and #2

**Violation of Constitutional Rights Under Color of State Law**
**-Conspiracy to Violate Plaintiff's Civil Rights-**

86. Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 85.

87. Defendant officers, as state actors in their individual capacities pursuing personal interests wholly separate and apart from that of the City of New York or New York City Police Department, conspired together, reached a mutual understanding, and acted in concert to undertake a course of conduct violative of Plaintiff's civil rights, as set forth herein, including:

   a. Agreeing to deliberately and maliciously fabricate evidence against the Plaintiff;

   b. Agreeing to arrest and contrive false charges against the Plaintiff; and

   c. Agreeing to forward false evidence to the Kings County District Attorneys office in an effort to secure his conviction.

88. This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

89. Defendants' actions were motivated by bad faith, malice, and/or deliberate indifference to the rights of Mr. Moore.

90. As a direct and proximate result of the unconstitutional acts described above, the Plaintiff has been irreparably injured.

**AS AND FOR THE FIFTH CAUSE OF ACTION
ON BEHALF OF THE PLAINTIFF AGAINST ALL DEFENDANTS**

**Violation of Constitutional Rights Under Color of State Law
-Failure to Intercede-**

91. Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 90.

92. In creating false evidence against Plaintiff Eugene Moore, in forwarding false evidence and information to prosecutors, and in providing false and misleading testimony, Defendants violated Plaintiff's constitutional right to a fair trial, and Plaintiff's right to be free from False Arrest and Malicious Prosecution under the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution.

93. The actions of Defendants detailed above violated the Plaintiff's rights under the United States Constitution. It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the clearly established constitutional rights of citizens from infringement by other law enforcement officers in their presence.

94. At all times relevant herein, the right to be free from deprivations of liberty interests caused by unjustifiable criminal charges and procedures were clearly established constitutional rights that a reasonable person would have known.

95. Defendants' actions were motivated by bad faith and malice, and/or deliberate indifference to the rights of Eugene Moore.

96. This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

97. As a direct and proximate result of the unconstitutional acts described above, Plaintiff Eugene Moore has been irreparably injured.

**AS AND FOR THE SIXTH CAUSE OF ACTION**
**ON BEHALF OF THE PLAINTIFF AGAINST DEFENDANT CITY OF NEW YORK**

**Violation of Constitutional Rights Under Color of State Law**
**-Implementation of Municipal Policies, Practices, and Customs that Directly Violate Constitutional Rights, Failure to Implement Municipal Policies to Avoid Constitutional Deprivations and Failure to Train and Supervise Employees**
**Under Color of State Law-**

98. Plaintiff incorporates by reference and reallege each and every allegation stated in Paragraphs 1 through 97.

99. Upon information and belief, Defendants City of New York, Sergeant Adiniou, Sergeant Leisengang, Lieutenant Ortlieb, Inspector Lehr, and Doe #1-10 who were supervisors and final decision makers, as a matter of policy, practice, and custom, approved and ratified the subordinate officers' conduct, or otherwise acted with a callous, reckless and deliberate indifference to the Plaintiff's constitutional rights and laws of the United States, in that they failed to adequately discipline, train, supervise or otherwise direct police officers concerning the rights of citizens, allowed or encouraged employees to

fabricate evidence against the Plaintiff, allowed or encouraged failures to disclose exculpatory evidence, elicited and/or or vouched and/or made up false or otherwise unreliable statements from witnesses and or made-up witnesses, and allowed or encouraged the forwarding of false or otherwise unreliable evidence to prosecutors in order to secure the Plaintiff's indictment and conviction.

100. In the alternative, and upon information and belief, Defendants City of New York, Sergeant Adiniou, Sergeant Leisengang, Lieutenant Ortlieb, Inspector Lehr, and Doe #1-10 instituted policies addressing the topics listed above, but through a culture of gross negligence, carelessness, and malice displayed by New York City police officers, demonstrated a deliberate and willful indifference to the constitutional rights of the Plaintiff.

101. Upon information and belief, in 2011, Kings County District Attorney Charles Hynes created the Conviction Integrity Unit in response to an ever-increasing number of wrongful convictions.

102. Upon information and belief, in or about July of 2013, the Kings County District Attorney's efforts substantially expanded, as the office announced the formation of an unprecedented panel of former prosecutors, professors, and retired judges to review as many as 50 convictions involving a former Kings County detective, Louis Scarella, who is alleged to have regularly sought false statements from witnesses, and whose work appears to have sent an array of innocent citizens to prison.

103. Upon information and belief, another former Kings County Detective, Michael Race, whose work has also been linked to the conviction of innocents, has been quoted in press

accounts as stating that of the 750 murder investigations he ran, only one was "done the correct way, A to Z."

104. The nature, regularity, and scale of such revelations, and the extraordinary efforts being undertaken in response to a highly publicized slew of wrongful convictions, gives rise to an inference of systemic incompetence and corruption on the part of the New York City Police Department, and in particular, those working in Kings County, as such a legacy of injustices cannot plausibly be laid at the feet of a few rogue officers.

105. Defendant(s) also, upon information and belief, demonstrated deliberate indifference to the rights of those arrested in the City of New York by failing to adequately hire, screen, train, and supervise officers and prosecutors in Kings County and the 67th Precinct.

106. The policies, procedures, customs and practices of the above-referenced Defendants violated the Constitutional rights of the Plaintiff under the Fourth, Sixth, and Fourteenth Amendments of the United States Constitution.

107. This conduct on the part of Defendants also represents a violation of 42 U.S.C § 1983, given that said actions were undertaken under color of state law.

108. None of the Defendants named herein have been disciplined in any way for their actions relative to the Plaintiff and others.

109. As a direct and proximate result of the unconstitutional acts described above, the Plaintiff has been irreparably injured.

**DEMAND FOR PUNITIVE DAMAGES**

110. The actions of Defendants described herein were extreme and outrageous, and shock the conscience of a reasonable person. Consequently, an award of punitive damages is

appropriate to punish the Defendants for their cruel and uncivilized conduct.  The Plaintiffs do not seek punitive damages against the City of New York.

## **DEMAND FOR TRIAL BY JURY**

111.  The Plaintiff hereby demands a trial by jury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Eugene Moore requests that this Honorable Court grant him the following relief:

A. A judgment against Defendants Jean-Baptiste, Adiniou, Leisengang, Ortlieb, Lehr, and Doe(s) for compensatory damages, and punitive damages in an amount to be determined by a properly charged jury;

B. A judgment in favor of Plaintiff against Defendant City of New York for compensatory damages in an amount to be determined by a properly charged jury; Plaintiff does not seek punitive damages from Defendant City of New York;

C. A monetary award for attorneys fees and costs of this action, pursuant to 42 U.S.C. § 1988;

D. Any other relief this Court finds to be just, proper, and equitable.

Dated:  New York, New York
        February 15, 2017

Respectfully Submitted By:

The Law Office of Jeffrey Chabrowe, P.C.
By:

_____/x_____
Andrew L. Hoffman, Of Counsel
EDNY Bar Code Number: AH9502
261 Madison Avenue, 12 Floor
New York, New York 10016

T: (212) 736-3935
E: ahoffman@andrewhoffmanlaw.com